be awarded against a defendant in an action for divorce where he was not served with summons, and did not appear in the action.

The judgment is therefore affirmed, with costs.    All concur.

(119 App. Div. 675)

## WILSON v. DELAWARE, L. & W. R. CO.

(Supreme Court, Appellate Division, Third Department. May 8, 1907.)

CARRIERS — FREIGHT CONTRACTS — EXEMPTION FROM LIABILITY — GROSS NEGLI-
GENCE—EVIDENCE.

A contract for the transportation of horses and a caretaker, exempted the carrier from liability for damages caused by the negligence of its employés. To push the car containing the horses and caretaker, a tie was placed on the corner of the engine on the main track, and between the bumpers of the car on a switch track. The tie slipped, and the rear trucks of the car left the track, injuring the caretaker and one of the horses. This manner of pushing cars was not uncommon. The engineer testified that he had frequently made use of the practice without accident. *Held,* not to authorize a finding that the employés were guilty of gross negligence, essential to a recovery.

Appeal from Trial Term, Chemung County.

Action by Albert Wilson against the Delaware, Lackawanna & Western Railroad Company. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Reversed, and new trial granted.

On October 30, 1902, plaintiff placed in a freight car at Gibson five horses to be carried by defendant to West Philadelphia. The horses were owned by one Dr. Lane of Corning, but plaintiff had an interest in them, and was to go with them to West Philadelphia as caretaker. Prior to the loading of the horses Dr. Lane had made arrangements over the telephone for their shipment. It seems that in the shipping of horses an arbitrary weight is charged for the first horse, 4,000 pounds, and for each subsequent horse, 3,000 pounds, except that where the whole car is taken, 20,000 pounds is charged for. The ordinary charge for the freight is 35 cents per thousand. In this case the charge was at the rate of 28 cents per 1,000 for 20,000 pounds. After the horses were placed in the car the plaintiff was called into the freight office and received the bill of lading and signed two papers. One of them recited in substance that, on account of the reduced rate at which the horses were taken, and in consideration thereof, the plaintiff released all claims for damages to the stock from various causes, and, among others, by reason of any negligence of the employés of the defendant, and in the same paper, in consideration of the free transportation of himself without extra charge other than the charge for transportation of the horses, he released the company from all claims for any personal damages which might arise by reason of the negligence of the servants of the company. In the second paper, which was entitled "Contract with Man or Men in Charge," was recited substantially the same release of any claim for personal damages against the defendant by reason of the negligence of the defendant or of its employés. During the following night the train reached Delaware, N. J. The car containing the plaintiff and the horses was separated from the train and run upon a switch track. The switch track was located four or five feet from the main track. The engine and two other cars then moved upon the main track, and backed with the rest of the train until the engine was somewhere in the rear of this car standing upon the switch. The purpose was to place this car in front of the engine upon the train. In order to push out the car from the switch a light railroad tie was placed upon the right corner of the engine and between the bumpers of the car and against the right hand bumper, resting upon the drawhead of the car in which the plaintiff was being carried. Two brakemen held the tie until the engine came against it and

then stepped aside. The engine was started ahead, the tie slipped and in some way the hind trucks of the car in which plaintiff was riding were pushed from the track, and the plaintiff was thrown against the side of the car and injured. One of the horses was thrown down.

It was claimed by the plaintiff that at the time he signed these releases he did not read them over, and that the defendant's clerk told him to sign a receipt for the bill of lading, and that he must hurry as the train was then due.

The trial judge submitted two questions to the jury: First, whether the plaintiff was induced to sign these releases without reading them by the false statement of the agent that he was signing a receipt for the bill of lading and that he must hurry as the train was then due. Second, whether the defendant was guilty of gross negligence by which plaintiff suffered the injuries for which he has sued. A verdict was rendered for the plaintiff, and a motion for a new trial was entertained. Before that motion was heard Justice Forbes died, and the motion was heard before Justice Sewell, who denied the same pro forma. From the judgment entered upon the verdict, and from the order denying the motion for a new trial, this appeal has been taken.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Reynolds, Stanchfield & Collin, for appellant.

John Deneen (Lewis E. Mosher, of counsel), for respondent.

SMITH, P. J. As the case was finally submitted to the jury, plaintiff was allowed to recover only upon proof that the defendant was guilty of gross negligence through which the plaintiff suffered his injuries. Defendant contends that by the contract it was released from all injuries caused by the negligence of the defendant or its servants, and the law does not distinguish between different degrees of negligence; that the plaintiff is not relieved from his contract of exemption though his injuries were suffered through the gross negligence of defendant. In my judgment, it is not necessary to determine whether such a contract is against public policy, so far as it releases the defendant from any gross negligence. In the light most favorable to the plaintiff, there was no such negligence shown in the case at bar as to relieve the plaintiff from the effect of his contract made upon sufficient consideration to exempt the defendant from liability for the negligence of its employés. It is perhaps impossible to define gross negligence, as that term is used in the various cases bearing upon the interpretation of these contracts. It must mean something more than ordinary mistake of judgment, and must refer either to a willful or to a reckless disregard either of right of property or of life. It appears from the evidence that this manner of pushing cars ahead by means of a stake of no greater length than the tie which was used in this case was not uncommon practice. The engineer of this train swore that he had frequently made use of the practice without accident, and, in fact, that he never before had had any accident arising from the use either of a stake or a tie in pushing forward a car upon an adjoining track. The two bumpers upon the back of a car are not separated more than one or two feet, and the placing of a tie between the bumpers and against the further bumper, whereby it could rest upon the drawhead which was between the bumpers, cannot, in any event, be held to evince a reckless disregard of either property or life. In view of the fact that this was not an uncommon way to push cars forward while the car was upon an adjoining track, in

our judgment, the jury was not authorized to find that the defendant, or its servants, had been guilty of any gross negligence, whereby the plaintiff suffered his injuries.

It follows that the judgment and order must be reversed, and a new trial granted, with costs to appellant to abide the event. All concur; KELLOGG, J., in result.